STATE EX REL. HERMANSON and another, Respondents, vs. CALLAHAN, Superintendent of Public Instruction of the State of Wisconsin, Appellant.

*January 11—February 6, 1923.*

*Schools: Alteration of boundaries of free high school districts: Necessity of election: Statutes.*

1. Under sec. 40.01, Stats., authorizing town boards of supervisors, village boards of trustees, and city councils to alter school district boundaries and to create, consolidate, or dissolve school districts, a free high school district may be enlarged, so as to charge added or outlying territory with the maintenance of the high school, without submitting the question to the voters in the added territory; secs. 40.15 and 40.51 being inapplicable as relating to different districts, and secs. 40.43 and 40.44, relating solely to the establishment of such districts, being insufficient to require by implication an election to authorize an alteration.

2. The proceedings for the establishment or alteration of school districts being purely statutory, the statutes should be substantially complied with, though they are not so strictly construed that unimportant mistakes will defeat the purpose.

3. A district in which a high school has been established or is maintained nevertheless remains an ordinary school district.

[4. Whether a change in the boundaries of an ordinary school district *ipso facto* changes the boundaries of the high school district, not decided.]

APPEAL from a judgment of the circuit court for Dane county: E. RAY STEVENS, Circuit Judge. *Reversed.*

*Certiorari* to review an order of the state superintendent

550     SUPREME COURT OF WISCONSIN.     [FEB.

State ex rel. Hermanson v. Callahan, 179 Wis. 549.

of public instruction reversing an order of the county board of education of Price county relating to the consolidation of certain school districts therein. It appears that on June 7, 1921, the town board of the town of Prentice and the village board of the village of Prentice, in Price county, adopted an order consolidating school districts Nos. 2, 4, and 10 of the town of Prentice with joint school district No. 1 of the village and town of Prentice. An appeal was then taken to the county board of education, by which the order of consolidation was reversed. Upon appeal from the order of the county board of education, the state superintendent of public instruction reversed its order.

This proceeding was instituted in the circuit court for Price county to review the order of the state superintendent. The place of trial was changed to Dane county. The circuit court for that county rendered judgment reversing the order of the state superintendent. From such judgment the state superintendent appeals.

For the appellant there was a brief by the *Attorney General* and *Mortimer Levitan,* assistant attorney general, and oral argument by *Mr. Levitan* and *Mr. Winfield W. Gilman,* assistant attorney general.

For the respondents there was a brief by *Barry & Barry* of Phillips and *Charles E. Hammersley* and *John S. Barry,* both of Milwaukee, of counsel, and oral argument by *John S. Barry.*

A brief was also filed by *James W. Murphy* of Platteville and *Alfred H. Bushnell* of Madison as *amici curiæ;* and oral argument by *Mr. Bushnell.*

OWEN, J. School districts Nos. 2, 4, and 10 of the town of Prentice are adjacent to the village of Prentice. A high school is maintained in joint school district No. 1 of the town and village of Prentice, but whether it is a free high school established under sec. 40.43, Stats., or whether it is a state graded school equivalent to a free high school does

not clearly appear.  The county board of education refers to it as a first class graded school having seven teachers. The state superintendent says "it is a school maintaining twelve grades for a twelve-year course of study, four years of which are denominated high school courses, a completion of which usually privileges the graduates to enter institutions higher than the high school free of tuition."  We infer that this is a state graded school equivalent to a high school and should so assume if that fact were material. As the decision of the lower court went on the assumption that it is a free high school, we shall so regard it.  The lower court held that these school districts could not be consolidated and the outlying districts be charged with the maintenance of the high school until the question of the maintenance of such school has been submitted to the electors of the district that is to be charged with such maintenance. Whether the lower court was correct in this respect is the exact question here presented.

Sec. 40.01 authorizes town boards of supervisors, village boards of trustees, and city councils to alter school-district boundaries, and to create, consolidate, or dissolve school districts.  This is the only authority found anywhere in the statutes for the alteration of school-district boundaries or for the consolidation of school districts, except the provisions of sec. 40.51 relating to the alteration of the boundaries of a union free high school district, and sec. 40.15, relating to the establishment of a consolidated rural school district.  Manifestly neither the provisions of sec. 40.51 or of sec. 40.15 are applicable to the situation under consideration, so that the only statutory authority for the consolidation of these school districts is to be found in sec. 40.01. But it is said that the statutes relating to the subject of high schools reveal a legislative policy that no school district or any part thereof shall be chargeable with the expense incident to the maintenance of a high school except pursuant to a majority vote upon that question.  Sec. 40.43 provides

for the establishment of a district free high school and sec. 40.44 provides for the establishment of a joint free high school by two or more districts. By these sections it is provided that the question of establishing a free high school shall be submitted by the school district board to the legally qualified voters at any annual or special meeting or election upon written resolution therefor proposed for adoption. Whenever a petition in writing praying for the submission of the question of establishing a free high school in a single district and signed by at least one tenth of the qualified voters residing therein shall be filed with the school district board, the district clerk is required to submit a resolution for that purpose to the voters of that school district. But it should be borne in mind that this relates to the *establishment* of a free high school. It is quite plain that the *establishment* of a free high school within one or more school districts is one thing and the alteration or enlargement of the boundaries of such school districts is quite another thing. While the expense of maintaining a high school is no doubt a very material consideration on the part of the electors as to whether such a school shall be established, it is by no means the sole consideration which is likely to influence their attitude upon that question. The question of whether there are sufficient pupils of high school attainments to make the school a success is a consideration scarcely less vital than that of the expense involved. No doubt there are other considerations which enter into the question. Upon the question of the establishment of a high school the voter is given the privilege of expressing his will in the light of all the circumstances having a bearing upon the question from his viewpoint.

An examination of the statutes reveals the following classes of schools maintained in what is known as the ordinary school district: rural schools of the first class; rural schools of the second class; state graded schools of the first class; state graded schools of the second class. Obviously

State ex rel. Hermanson v. Callahan, 179 Wis. 549.

schools of the higher classes are maintained at a greater expense than schools of the lower classes. This is especially true of a state graded school of the first class, which may be a school just a little less than one equivalent to a free high school. It must be conceded that the town boards, village boards, and city councils are fully authorized and empowered to annex territory to a school district maintaining this character of a state graded school. The interest of those residing within the territory so attached is exactly of the same character and may be scarcely less in degree when the attachment is to a school district maintaining a high character of graded school as to one maintaining a free high school. If it be unjust to annex territory to a district maintaining a free high school without giving those annexed an opportunity to vote thereon, it is just as vicious to annex them to a district maintaining an expensive state graded school. Yet the latter unquestionably may be done. If the former cannot be done it should pretty clearly appear from the statutes.

We assume it was the legislative purpose to authorize a method by which the boundaries of any school district might be changed. Sec. 40.01 is general and by its terms applies to every school district except town free high school and union free high school districts, which are expressly excepted. As already stated, there is a special provision for changing the boundaries of a union high school district. Town free high schools have been abolished, and the provision in sec. 40.01 exempting town free high schools was not taken out when such schools were abolished, possibly because the same was overlooked. We are face to face, therefore, with this proposition: If the boundaries of school districts within which high schools are maintained cannot be altered in the manner prescribed by sec. 40.01, how are they to be altered? The general contention is made that they cannot be altered except by a vote of the people who will be transferred into the district maintaining the high

school.   It is said that this is necessarily implied from the fact that free high schools may be *established* only upon the affirmative vote of the electors of the district.   But how and by whom shall such an election be called and held?   The statute makes no provision.   Where a statute requires the holding of an election we may expect to find specific provisions for the calling and conduct thereof.   Elections are provided upon the question of the establishment of a free high school, upon the question of the creation of a consolidated rural school, upon the establishment of a union free high school, and upon the change of the boundaries of a union free high school district.   There is no such provision, however, for the alteration of the boundaries of a free high school district.

  · Proceedings for the establishment of school districts and the alteration of the boundaries thereof are statutory proceedings, pure and simple.   While such statutes are not construed so strictly that unimportant mistakes in following the prescribed proceedings will defeat the purpose of the statute, nevertheless such statutory proceedings must be substantially complied with.   *Kittelson v. Dettinger,* 174 Wis. 71, 182 N. W. 340; *State ex rel. Taylor v. McKinny,* 146 Wis. 673, 132 N. W. 600.   When the fundamental statutory character of such proceedings is considered, and when we reflect that the legislature has specifically provided for elections in the instances above enumerated, a legislative intent to require an election to change the boundaries of a free high school district is strongly negatived.   Our attention has been called to no case where any court has construed any legislation as requiring the holding of an election by necessary implication.   We are persuaded that such a holding would be not only unusual but extreme.   Such a holding would require the court to at once enter the legislative field and prescribe the manner of holding such an election.   If it be suggested that the election should be held in the same manner as the one provided for the establishment of a free

high· school, the answer is that such an election does not fit in at·all with the legislative. plan for changing school-district boundaries. The same may be said of the. other school elections for which statutory provision is made. These elections are to be called by school-district officers. But the school-district boundaries are to be changed by the town supervisors, the village·boards, or the city councils. So we have a situation where the school-district officers, who under prescribed conditions may call school elections, cannot change the boundaries, and where the officers clothed with authority to· change the boundaries are entirely lacking in statutory authority to call school elections. It would seem that if it be held that an election is necessary in order to change the boundary of a free high school district, then· it cannot be changed at all, because it is utterly impossible to point out the manner or by whom such election is to be called and conducted. But the statutes clearly contemplate that the boundaries of any school district may be changed. We cannot construe the legislative provisions on the subject under consideration so as either to deny all authority anywhere to change such boundaries or to make such change de- · pendent upon an election which no one has any power or authority to institute. A consideration of the legislation bearing on this subject negatives rather than implies a legislative intent that high school district boundaries can be changed only upon a vote of the people. We think the lower court was in error in so deciding.

It should not be overlooked that a school district in which a high school has been established or is maintained nevertheless remains an ordinary school district. It continues to be governed in the same manner. It has educational problems and interests aside from those relating to the high school. If such interests require a change of the boundaries it should not be held, in the absence of specific legislative declaration, that they have lost their identity as ordinary· school districts. In fact, our consideration of this case has

impressed us with the thought that the question of whether a change in the boundaries of the ordinary school district *ipso facto* changes the boundaries of the high school district is an interesting question.   There is plenty of evidence to be found in the statutes, such as secs. 40.47, 40.54, 40.55, and 40.56, that high school districts are distinct political entities. While in the first instance their boundaries conform to those of one or more common school districts, does a change in the boundary of the common school district *ipso facto* enlarge or contract the boundaries of the free high school district?   This is a question upon which we express no opinion, but suggest that the statute may be made more plain upon that question.

*By the Court.*—The judgment of the circuit court is reversed, and cause remanded with directions to enter judgment affirming the order of the state superintendent of public instruction.